**STATE FARM FIRE & CASUALTY COMPANY a/s/o David Hawker, Plaintiff,**

v.

**SWIZZ STYLE, INC., Defendant.**

**Swizz Style, Inc., Third-Party Plaintiff,**

v.

**Stadler Form Aktiengesellschaft, Third-Party Defendant.**

**No. 15 Civ. 9432 (NSR)**

United States District Court, S.D. New York.

Signed 03/23/2017

---

Stuart D. Markowitz, Law Offices of Stuart D. Markowitz, P.C., Jericho, NY, for Plaintiff.

Richard G. Corde, Boeggman, George, Hodges & Corde, P.C., White Plains, NY, Thomas R. Pender, William J. Cremer, Cremer Spina, et al., Chicago, IL, for Third–Party Defendant.

Paul Lawrence Kassirer, Dennis Michael Rothman, Lester, Schwab, Katz and Dwyer LLP, New York, NY, for Defendant/Third–Party Plaintiff.

## OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

An air purifier designed overseas by a Swiss corporation caught fire and caused damage to a home located in Bedford Hills, NY. The insurance company covering the home brought suit against the U.S. distributor of the air purifier claiming design defects caused the fire. The distributer counter-sued the foreign manufacturer. The foreign third-party defendant now seeks to dismiss the third-party complaint for lack of personal jurisdiction. Despite recent Supreme Court cases restricting the exercise of personal jurisdiction over foreign defendants, the manufacturer in this case has sufficient contacts with New York to establish specific jurisdiction. ·

For the following reasons, the motion to dismiss is DENIED.

## BACKGROUND

For the purposes of determining whether personal jurisdiction exists over the third-party defendant, the relevant facts taken from the motion papers are as follows.[1]

### I. Facts Alleged in the Underlying Action

In mid–2012, David Hawker, a resident of Bedford Hills, New York, came to own a "Viktor" air purifier when it was "drop-shipped" to him via "the gilt.com website"

---

1. The motion was fully briefed as of August 30, 2016. (*See* Mem. in Supp. of Mot. ("Stadler Mem."), ECF No. 46; Aff. Thomas Becker in Supp. of Mot. ("Becker Aff."), ECF No. 45; Mem. in Opp'n of Mot. ("Swizz Opp'n"), ECF No. 48; Decl. Juerg Baenziger in Opp'n to Mot. ("Baenziger Decl."), ECF No. 49; Reply Mem. in Supp. of Mot. ("Stadler Reply"), ECF No. 50.)

by Swizz Style, Inc. (Answer ¶ 8, ECF No. 11.) On June 26, 2014, the air purifier caught fire at Mr. Hawker's property in Bedford Hills causing damage to his home and personal property. (Notice of Removal, Ex. 1 (Verified Compl.) ¶¶ 10, 12.) Fortunately, Mr. Hawker had an insurance policy issued by State Farm Fire & Casualty Co. ("State Farm") covering the property and personal items contained therein. (*Id.* ¶ 8.)

After the fire, State Farm exercised its rights under the policy and, as subrogor, sued Swizz Style on behalf of Hawker, as subrogee, alleging Swizz Style's negligence led to the defective air purifier catching fire and causing property damage in the amount of $267,141.47. (*Id.* ¶¶ 3, 14, 20.) State Farm alleged that Swizz Style "designed, manufactured, built, tested, distributed, delivered, sold, repaired, serviced, and/or inspected" the air purifier and "sold and distributed [the] air purifier to wholesale and retail establishments for its sale and distribution in the State of New York." (*Id.* ¶¶ 10–11.)

Swizz Style responded to the allegations by admitting that "it sold the [ ] air purifier [at issue] before June 26, 2014" and further explaining that "it sells the V[iktor] air purifier in the United States" but "purchased and continues to purchase the [ ] air purifiers it sells from Stadler Form Aktiengesellschaft" ("Stadler Form"), which is located in Switzerland. (Answer ¶ 5.) Swizz Style additionally denied that the air purifier was defective and denied responsibility for whatever acts led to Hawker's damages. (*Id.* ¶¶ 21–22.) Rather, Swizz Style alleged it would be entitled to indemnification from Stadler Form, the party "solely responsible for defectively designing, manufacturing, building, testing, distributing, delivering, selling, repairing, servicing or inspecting the air purifier in all relevant respects[.]" (Third Party Compl. ¶¶ 14, 17.)

## II. The Relationship Between Distributor Swizz Style, Manufacturer Stadler Form, and New York

Stadler Form was organized under the laws of Switzerland starting in 1998 and operates out of Lug, Switzerland. (Becker Aff. ¶¶ 3, 4.) Stadler Form has never been incorporated in New York, has never maintained its principal place of business or an office in New York, has never maintained any employees or bank accounts in New York, has never been registered to do business or had a registered agent for service of process in New York, has never owned or leased any property in New York or had a New York phone number, and has never paid any taxes to New York. (*Id.* ¶¶ 6–14, 17.) Stadler Form alleges that it maintains no assets in New York, and that no employee of Stadler Form travelled to New York on its behalf in connection to the matters at issue in this lawsuit. (*Id.* ¶ 15, 16.)

Instead, Swizz Style, an Ohio-based corporation, purchased Viktor air purifiers from Stadler Form pursuant to a written distribution agreement. (Third Party Compl. ¶¶ 6, 7, 13.) Swizz Style has been the exclusive U.S. distributor of Stadler Form's goods since 2006. (Baenziger Decl. ¶ 5.) The purifiers are shipped "free-on-board" and title is transferred between Stadler Form and Swizz Style in China. (Becker Aff. ¶ 22.) Stadler Form thus asserts that the allegedly negligent actions connected to the manufacturing of the air purifier would have taken place in either Switzerland or China. (*Id.* ¶ 19.)

Stadler Form asserts that it does not directly sell, distribute, or transfer the Viktor air purifiers to citizens of New York. (Becker Aff. ¶¶ 20–21.) Moreover, Stadler Form alleges it "did not have any input and/or control regarding where Swiss Style would ultimately sell the [ ] air purifiers in the United States." (*Id.* ¶ 23.) Instead, it was Swizz Style that had the

"responsib[ility] for selling and delivering the [ ] air purifiers to end users and retailers in the United States." (*Id.* ¶ 24.) Swizz Style, however, alleges that Stadler Form—which "derives most of its revenue from international commerce"—chose to "target[ ] New York as a market for its fashionable, stylish products, and was keenly aware of the significant sales of [its products]" in New York. (Baenziger Decl. ¶¶ 2, 8.)

In fact, Swizz Style and Stadler Form engaged in "many meetings in 2010 and 2011 in which [they] discussed [ ] th[ose] considerations and made New York a target because of them." (*Id.* ¶ 10.) Swizz Style alleges that focusing on New York paid off, as Stadler Form knew: in 2012, "monthly meetings by Skype" took place between the two where Swizz Style "advise[d] Stadler Form's personnel, including its principal Martin Stadler, on significant sales and its significant retailer/resellers buyers, especially those in New York." (*Id.* ¶ 12.) Swiss Style alleges that at the time Mr. Hawker purchased his Viktor air purifier, New York made up 34% of Swiss Style's sales of Stadler Form products. (*Id.* ¶ 14.) As to Swizz Style's knowledge of Stadler Form's main source of revenue, the principal of Swizz Style—based on his "long association with Stadler Form and its principals before and after December 2011"[2]—asserts that Stadler Form "derives most of its substantial revenues from international commerce." (*Id.* ¶ 19; *see also* Stadler Reply at 6 (undisputed).)

Regarding the fire at issue in the direct action, Swizz Style alleges that Stadler Form provided "retrofitting kits" to "correct[ ] a potential overheating condition in the Viktor air purifiers sold ... into New York" after a government recall of the purifiers in Europe between 2011 and 2012. (*Id.* ¶ 3.) Moreover, Swizz Style alleges Stadler Form "encouraged" it to delete any records of the reworking of the units, which it contends demonstrates Stadler Form "knew or should have known that it could be called to account for a fire in New York." (*Id.*) The email excerpt cited by Swizz Style indicates that Thomas Becker, Production and Quality Control Manager for Stadler Form, suggested Swizz Style could "delete the message on [its] homepage," presumably regarding the overheating issue, since Swizz Style was "able to contact nearly all [of its] customers," particularly since "it was not a require[ment] from the government that [Swizz Style] do [the] rework[.]" (*Id.* ¶ 17; *see also* Becker Aff. ¶ 2 (noting Mr. Becker's history with the company).)

## III. Procedural History

On October 22, 2015, Plaintiff State Farm filed suit against Defendant Swizz Style in New York state court. (Notice of Removal ¶ 1, ECF No. 1.) On December 1, 2015, Swizz Style removed the state court action to this Court on the basis of diversity jurisdiction. (Notice of Removal ¶¶ 2–3, 5.)[3] Swizz Style then filed a third-party

---

**2.** Swizz Style also alleges that it and Stadler Form were "affiliated corporations" up until the end of 2011, when Mr. Baenziger sold his shares in one company for exclusive control of Swizz Style and the corporate relationship changed. (Baenziger Decl. ¶¶ 4, 6.) The full extent of the agreements between the corporations and their structures are unclear.

**3.** On the basis of the pleadings, affidavits, and declarations submitted, the parties are entirely diverse and the amount in controversy is

greater than $75,000. *See* 28 U.S.C. § 1332. State Farm is an Illinois corporation having its principal place of business in Bloomington, Illinois; Mr. Hawker is a citizen of the State of New York residing in Bedford Hills, New York; Swizz Style is an Ohio corporation having its principal place of business in Dover, Ohio; and Stadler Form is a Swiss corporation having its principal place of business in Zug, Switzerland. (Third Party Compl., ¶¶ 4–7; Becker Aff. ¶¶ 3, 4; Baenziger Decl. ¶ 5.)

886

complaint against Stadler Form on January 29, 2016. (ECF No. 17.) Stadler Form has moved to dismiss that complaint on the basis that the Court cannot assert personal jurisdiction over the Swiss company. (ECF No. 42.) Swizz Style has requested the opportunity to take jurisdictional discovery in the event the Court finds Swizz Style has failed to establish jurisdiction. (*See* Swizz Opp'n at 6, 17; Baenziger Decl. ¶ 24 (describing areas where discovery may be needed).)

## STANDARD ON A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■ "In order to survive a [Rule 12(b)(2) ] motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). "Such a showing entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (alteration in original) (citation omitted). Although the "plaintiff bears the ultimate burden of establishing jurisdiction over the defendant by a preponderance of evidence," *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)), the Court will "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[ ]" when considering whether such a showing has been made. *Licci*, 732 F.3d at 167 (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

## DISCUSSION

■ The Court must decide whether Swizz Style, an Ohio corporation, can show that asserting personal jurisdiction over Stadler Form, a Swiss corporation, is proper in this suit brought under diversity jurisdiction in a federal court located in New York: the forum where the injury is alleged to have occurred. "In diversity cases . . ., a district court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over foreign defendants." *Jonas v. Estate of Leven*, 116 F.Supp.3d 314, 323 (S.D.N.Y. 2015) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc) (Friendly, J.)) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."). After "determin[ing] whether the defendant is subject to jurisdiction under the law of the forum state— here, New York"—a court must consider "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (citing *Licci*, 732 F.3d at 168).

■ "[A] court may exercise two types of personal jurisdiction over a corporate defendant properly served with process[:] . . . specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction." *Brown*, 814 F.3d at 624. "Specific jurisdiction is available when

the cause of action sued upon arises out of the defendant's activities in a state." *Id.* In New York, there are four varieties of in-state activities that can subject a foreign defendant to jurisdiction pursuant to New York's "long-arm" statute, N.Y. C.P.L.R. § 302(a). *See Licci*, 732 F.3d at 168. "General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Brown*, 814 F.3d at 624. New York permits the exercise of general jurisdiction, pursuant to N.Y. C.P.L.R. § 301, "where a company 'has engaged in such a continuous and systematic course of "doing business" [in New York] that a finding of its "presence" [in New York] is warranted.'" *Sonera*, 750 F.3d at 224 (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990)).

Third–Party Plaintiff Swizz Style does not assert that Third–Party Defendant Stadler Form can be subjected to general jurisdiction. (Swizz Opp'n at 3.)[4] Therefore, the Court narrows its focus to determine 1) whether Stadler Form is subject to specific jurisdiction pursuant to N.Y. C.P.L.R. § 302(a), and 2) whether exercising personal jurisdiction over Stadler Form would comport with due process.

## I. Specific Jurisdiction under New York law

Under New York's long-arm statute, a court has specific jurisdiction over a foreign defendant that: 1) "transacts any business within the state or contracts anywhere to supply goods or services in the

state," 2) "commits a tortious act within the state," 3) "commits a tortious act [outside] the state causing injury to person or property within the state," or 4) "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a). If the alleged tortious act occurred outside of New York but caused injury inside New York as in this case, then there are additional prerequisites to asserting jurisdiction over the foreign defendant. The defendant must either a) "regularly do[ ] or solicit[ ] business" in New York, b) "engage[ ] in any other persistent course of conduct" in New York, c) "derive[ ] substantial revenue from goods used or consumed or services rendered" in New York, or d) "derive[ ] substantial revenue from interstate or international commerce" and "expect[ ] or should reasonably expect the act [occurring outside New York] to have consequences" in New York. N.Y. C.P.L.R. § 302(a)(3).

█ The third basis for asserting specific jurisdiction is relevant to the instant dispute involving Stadler Form, as the alleged defective design of the air purifier would have taken place by Stadler Form in Switzerland or China, and the result of the defective design was felt in New York when the purifier caught fire. Swizz Style relies on *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999), to establish personal jurisdiction over Stadler Form pursuant to the final avenue available under § 302(a)(3)—substantial revenue derived from international commerce coupled with a reasonable expectation that the corporation's actions outside of the state

---

**4.** Given Stadler Form's generally lacking physical presence in the state, and the separation between itself and its U.S. distributor, Swizz Style, the Court additionally finds it unlikely that Stadler Form's relationship to New York is the "exceptional case" rendering it "at home" in this forum. *See Daimler AG v. Bauman*, ––– U.S. ––––, 134 S.Ct. 746, 761

n.19, 187 L.Ed.2d 624 (2014); *see also Brown*, 814 F.3d at 629 ("mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case'"); *Sonera*, 750 F.3d at 226 (even if various contacts with New York were imputed to foreign corporation at issue, it would not be "at home").

would have consequences in the state. *See* N.Y. C.P.L.R. § 302(a)(3)(ii). Under this portion of the long-arm statute, " '[t]he test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one,' " and "the simple likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element[.]' " *Kernan*, 175 F.3d at 241 (quoting *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 333, 357 N.Y.S.2d 547 (3d Dep't 1974), and *In re DES Cases*, 789 F.Supp. 552, 570–71 (E.D.N.Y. 1992)).[5]

In *Kernan*, the Second Circuit determined that the court had personal jurisdiction over a Japanese manufacturer under § 302(a)(3)(ii) even though the company operated through a Pennsylvania distributor and did not directly serve consumers in New York. *Id.* at 242. The Circuit emphasized the exclusivity of the sales agreement between the manufacturer and the distributor, which sold the allegedly defective "hot stamping press" at issue in the case, and the manufacturer's "general knowledge" that the distributor would resell machines in Pennsylvania and throughout the United States. *Id.* Moreover, the exclusive sales agreement permitted the sale of the Japanese manufacturer's product throughout the world, though it did not specifically direct the Pennsylvania sales agent to target the New York market. *Id.* Nevertheless, the *Kernan* court was satisfied that the manufacturer "did indeed attempt to serve the New York market, even if it did so indirectly," such that the manufacturer might have expected its actions to have consequences in New York. *Id.*

The court in *Kernan* analyzed the differences between *Schaadt v. T. W. Kutter, Inc.*, 169 A.D.2d 969, 970, 564 N.Y.S.2d 865 (3d Dep't 1991), where the Third Department of New York's Appellate Division concluded a German manufacturer of a meat packing machine could *not* be subjected to New York's long-arm statute, and *Kappas v. T. W. Kutter, Inc.*, 192 A.D.2d 402, 402, 596 N.Y.S.2d 361 (1st Dep't 1993), where the First Department sought a more complete record regarding the same manufacturer's contacts with New York. Notably, the *Kappas* court looked at the distributor's servicing of machines in New York and the manufacturer's warranting of the machines—considering the nature of the contractual relationship between the parties and the imputation of contacts on an agency basis. Ultimately, the *Kernan* court found the potential for "the exchange of information relevant to product development" to be a key factor tipping towards the *Kappas* side of the scale and away from *Schaadt*, meaning that the manufacturer's potential for awareness of profitable markets for the machines militated in favor of exercising jurisdiction over the manufacturer. Stadler Form largely ignores *Kernan* except to question its continued viability in passing, which is discussed further below, and to strenuously argue that this case is more like *Schaadt*. (*See* Stadler Reply at 12; *see infra* Section II (due process analysis).)

▪ Until the Second Circuit directly addresses *Kernan*, it controls this Court's analysis of jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(ii)—which may be broader than the confines of due process—and its application easily leads to the same

---

**5.** "There is some uncertainty as to whether courts should require 'purposeful availment' as part of the foreseeability element." *Levans v. Delta Airlines, Inc.*, 988 F.Supp.2d 330, 339 (E.D.N.Y. 2013) (finding § 302(a)(3)(ii) not met after incorporating the minimum contacts due process analysis into the long-arm statute). This Court opts to keep the two analyses separate absent a clear indication from the New York state courts.

result with regard to New York's long-arm. *See, e.g., Ikeda v. J. Sisters 57, Inc.,* No. 14 Civ. 3570 (ER), 2015 WL 4096255, at *5, *8 (S.D.N.Y. July 6, 2015) (personal jurisdiction was appropriate under New York law but would not satisfy the demands of due process). Based on the allegations presented and Swizz Style's supporting declaration, Swizz Style has made a prima facie showing that Stadler Form derives substantial revenue from international commerce[6] and should reasonably have expected the potential design flaw associated with the air purifier to have ramifications in the United States generally and New York specifically. Indeed, Stadler Form is alleged to have participated in monthly meetings where New York was targeted based on design and market considerations.

Therefore, the Court must now determine whether exercising jurisdiction over Stadler Form pursuant to New York's long-arm statute would comport with due process.

## II. Due Process Considerations

The Supreme Court has reshaped the contours of personal jurisdiction over the course of this decade. Through its decisions in *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011), *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011), *Daimler AG v. Bauman,* — U.S. ——, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), and *Walden v. Fiore,* — U.S. ——, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014), previous conceptions of where a corporation is "at home" or what activities create sufficient ties to a forum for the purposes of establishing jurisdiction over a corporation have been eschewed in favor of more restrictive formulations.

*Goodyear* and *Daimler* reduced the exercise of general jurisdiction in favor of specific jurisdiction. *Goodyear,* 564 U.S. at 924, 131 S.Ct. 2846 ("the paradigm forum for the exercise of general jurisdiction ... for a corporation ... [is] one in which the corporation is fairly regarded as at home") (citation omitted); *Daimler,* 134 S.Ct. at 761 ("the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in *some sense* 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are *so* "continuous and systematic" as to render [it] essentially at home in the forum State'") (citation omitted and emphasis added); *id.* at 761 n.19 ("We do not foreclose the possibility that in an exceptional case ... a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State").

But specific jurisdiction has receded as well under *J. McIntyre* and *Walden. See J. McIntyre,* 564 U.S. at 888–89, 131 S.Ct. 2780 (Breyer, J., concurring) ("a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place"); *id.* at 882, 131 S.Ct. 2780 (Kennedy, J., plurality) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said

---

6. Stadler Form does not dispute that it derives substantial revenue from international commerce. (Stadler Reply at 6.) Indeed, Swizz Style's revenues from New York specifically total approximately $330,000 for the year the air purifier was sold, $530,000 for the year when it caught fire, and $440,000 at the time the action was commenced. (Baenziger Decl. ¶ 14.)

to have targeted the forum"); *Walden*, 134 S.Ct. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State").[7]

 Against this revised backdrop, in order to determine "whether a forum State may assert specific jurisdiction over a nonresident defendant," the Court "focuses on the relationship among the defendant, the forum, and the litigation." *Waldman*, 835 F.3d at 335. "[T]he assertion of jurisdiction [must also] 'comport[ ] with 'traditional notions of fair play and substantial justice'—that is, [ ] it [must be] reasonable under the circumstances of [this] case." *Kernan*, 175 F.3d at 244 (citations omitted).

### a. Forum Contacts

 "[T]he defendant's suit-related conduct must create a substantial connection with the forum State" in order for the exercise of jurisdiction to be consistent with due process. *Waldman*, 835 F.3d at 335 (quoting *Walden*, 134 S.Ct. at 1121). When considering the "minimum contacts" that must be present between the defendant and the forum, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (quot-

ing *Walden*, 134 S.Ct. at 1122). After *J. McIntyre*, "a local plaintiff injured by the activity of a manufacturer seeking to exploit a multistate or global market" cannot bring suit against the foreign manufacture in the "courts of the place where the product was sold and caused injury" without more: a "'regular [ ] flow' or 'regular course' of sales in [the state]" or a "special state-related design, advertising, advice, marketing, or [something] else." *J. McIntyre*, 564 U.S. at 910–11, 131 S.Ct. 2780 (Ginsburg, J., dissenting) (citing amongst other cases *Kernan v. Kurtz–Hastings, Inc.*); *id.* at 889, (Breyer, J., concurring) (controlling opinion).

Thus, despite the *Kernan* court's determination that exercise of personal jurisdiction was warranted where the manufacturer "did indeed attempt to [indirectly] serve the New York market," the revised strictures of due process now require "something more." *Kernan*, 175 F.3d at 242; *J. McIntyre*, 564 U.S. at 889, 131 S.Ct. 2780. *Compare, e.g.*, *OneBeacon Ins. Grp. v. Tylo AB*, 731 F.Supp.2d 250, 260 (D. Conn. 2010) (exercising specific jurisdiction over a foreign manufacturer that "had no specific knowledge of what would become of its products once it provided them to [its U.S. distributor], other than the general knowledge that [the distributor] would resell them somewhere in the northeastern United States"), *with Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F.Supp.2d 501, 513 (D.N.J. 2011) ("there is no doubt that

---

7. These decisions have serious ramifications for American citizens attempting to sue multinational corporations in American courts. *See J. McIntyre*, 564 U.S. at 894, 131 S.Ct. 2780 (Ginsburg, J., dissenting) ("the splintered majority today 'turn[s] the clock back to the days before modern long-arm statutes when a manufacturer, to avoid being haled into court where a user is injured, need only Pilate-like wash its hands of a product by having independent distributors market it.'") (citation omitted); *Daimler*, 134 S.Ct. at 772 (Sotomayor, J., concurring) ("the majority's approach

unduly curtails the States' sovereign authority to adjudicate disputes against corporate defendants who have engaged in continuous and substantial business operations within their boundaries"); *see also Brown*, 814 F.3d at 627 ("Offsetting the apparent harshness of [the *Daimler* decision], the Court explained its expectation that its ruling, while restrictive of general jurisdiction, still left plaintiffs with an adjudicatory forum by recourse to specific jurisdiction of courts in states bearing a relationship to the cause of action").

[*J. McIntyre*] .stands for the proposition that targeting the national market is *not* enough to impute jurisdiction to all the forum States [and] ... overruled the line of cases ... which held to the contrary"). Courts in this Circuit have also recognized that *Kernan* may be in conflict with *J. McIntyre. See Tanner v. Heath Graphics LLC*, No. 15 Civ. 0098 (LEK) (CFH), 2017 WL 922013, at *7 (N.D.N.Y. Mar. 8, 2017) ("*Kernan*'s holding on [due process] conflicts with Justice Breyer's concurrence in [*J. McIntyre* ] and is no longer good law."); *Ikeda*, 2015 WL 4096255, at *9 ("The Court notes, however, that *Kernan* was decided before the Supreme Court issued its opinion in [*J. McIntyre* ] and that the Second Circuit has not indicated what, if any, effect [that case] has on *Kernan*."). Thus, Swizz Style's reliance on *Kernan* and similar cases is incomplete with regard to the due process portion of the specific jurisdiction analysis.

The Court in *Daimler*—which focused on general rather than specific jurisdiction—provided a brief overview of situations where a finding of specific jurisdiction would ostensibly still comport with due process, listing forum specific connections such as: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," "efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States," having its largest distribution of its product in the forum State, or the "continuous[ ] and deliberate[ ] exploit[ation]" of the forum State's market. *Daimler*, 134 S.Ct. at 755 n.7 (quoting *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (opinion of O'Connor, J.), *World–Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780–81, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

Of the courts in this Circuit that have considered *Kernan-like* situations post–*J. McIntyre*, only one has found that the exercise of personal jurisdiction over the foreign defendant would not offend due process. In *UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.*, the "something more" was present: the foreign manufacturer had to "approve" any orders it received from its distributor. 844 F.Supp.2d 366, 369 (S.D.N.Y. 2012). That approval requirement led the court to determine that the manufacturer had "presumptive knowledge" over the "hundreds of thousands of batteries that were sold to [the injured plaintiff]" as a result of the distributor's solicitation of business and actual sales within New York. *Id.* at 376–77 (these factors demonstrated "a strong[er] inference of an expectation of true national distribution ... than that which could be drawn from the *J. McIntyre* defendant's sale of [a] ... limited number of units to an independent U.S. distributor").

In the remaining examples, where only an exclusive distributorship agreement existed between the distributor and manufacturer and allegations of forum-specific contacts were lacking, courts have understandably found that they cannot constitutionally exercise personal jurisdiction over the manufacturer. *Tanner*, 2017 WL 922013, at *7 ("no indication that [the manufacturer] engaged in any New York-focused activities" where there was "only one documented sale [made] to New York [and] that sale took place under a nationwide distribution agreement that did not explicitly target New York"); *Ikeda*, 2015 WL 4096255, at *8 (no allegations present "that demonstrate [the manufacturer's]

specific effort to sell in New York, such as 'special state-related design, advertising, advice, marketing, or anything else.' "); *Davidson v. Honeywell Int'l Inc.*, No. 14 Civ. 3886 (LGS), 2015 WL 1399891, at *3 (S.D.N.Y. Mar. 26, 2015) (manufacturer's "alleged negligence in the design, manufacture and assembly of [a part] on the aircraft ... took place in Maryland," the manufacturer "never manufactured or sold [the part] to customers in New York," and the plaintiffs did not show "any action purposefully directed toward New York"); *Boyce v. Cycle Spectrum, Inc.*, 303 F.R.D. 182, 186 (E.D.N.Y. 2014) (no allegations of "any arrangements with companies incorporated or doing business in New York to sell bicycle parts or bicycles containing [the manufacturer's] parts in New York," and the manufacturer "did not target the New York market"); *Dejana v. Marine Tech., Inc.*, No. 10 Civ. 4029 (JS) (WDW), 2011 WL 4530012, at *6 (E.D.N.Y. Sept. 26, 2011) (manufacturer "d[id] not have representatives in New York, [ ] ha[d] not delivered boats to New York, and [ ] d[id] not solicit sales in New York").

The thoughtful analysis in *Ikeda v. J. Sisters 57, Inc.* serves as a useful comparator, since the action involved a similar scenario, and the court determined that although New York's long-arm statute was satisfied, the allegations in that case were insufficient to allow it to exercise jurisdiction over a foreign defendant in accordance with the bounds of due process. 2015 WL 4096255, at *5, *8. In *Ikeda*, a consumer was injured by a hair care product in New York. *Id.* at *1. The product's sole U.S. distributor was based in Florida, and the product's manufacturer was based in the United Kingdom. *Id.* at *2. There, the plaintiffs failed to allege "that any additional products manufactured by [the foreign manufacturer] reached the New York market, let alone ventured to estimate the volume of [its] goods that make their way into the state." *Id.* at *8. "Nor ha[d] they

alleged any other facts that demonstrate[d] [the manufacturer's] specific effort to sell in New York, such as 'special state-related design, advertising, advice, marketing, or anything else.' " *Id.* Thus, the Court had no choice but to find the plaintiffs' jurisdictional allegations lacking. *Id.* at *8–10 (providing the plaintiffs with the opportunity to conduct jurisdictional discovery prior to dismissing the complaint).

 In contrast to *Ikeda*, Swizz Style has alleged that a significant volume of its sales—as the exclusive distributor in the United States—were directed to New York, that Stadler Form was aware of and "targeted" New York specifically, and that Stadler Form might reasonably have suspected it could be called upon to answer for any fires related to the Viktor air purifiers in light of the retrofitting kits it provided to Swizz Style to correct the overheating problem. On the basis of these allegations, Stadler Form has even greater knowledge of New York's importance in terms of product sales than the manufacturer in *UTC Fire*—and the items missing from *Ikeda* are present. *See also Darrow v. Deutschland*, 119 A.D.3d 1142, 1144–45, 990 N.Y.S.2d 150 (3d Dep't 2014) (German corporation's "awareness" of the regional distribution network by which its products were distributed to New York provided minimum contacts "compatible with federal due process standards"). Therefore, Swizz Style has alleged Stadler Form had the minimum contacts with New York necessary to support the exercise of specific jurisdiction.

**b. Reasonableness**

 Because Swizz Style has established the necessary minimum contacts between Stadler Form and New York, the Court must decide if the exercise of personal jurisdiction over the Swiss corporation would be reasonable. *Kernan*, 175

F.3d at 244. The burden now shifts to Stadler Form to proffer a compelling reason against the exercise of jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). The reasonableness of jurisdiction is inversely proportional to the minimum contacts present. *See id.* ("[reasonableness] considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required").

■ There are five "reasonableness" factors that inform this determination:
(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.
*Kernan*, 175 F.3d at 244. In this modern era, the first prong is largely disregarded with respect to solvent corporate defendants. *Id.* at 244 ("the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago"). And it is hard to imagine that a corporation with distributors in every country across the globe would be heavily burdened by travel or translation costs.

As for New York's interest in adjudicating this case, Stadler Form argues an action for indemnification is largely unimportant to the State. *See Asahi*, 480 U.S. at 114–15, 107 S.Ct. 1026 ("The dispute between [the Taiwanese corporation] and [the Japanese corporation] [was] primarily about indemnification rather than [enforcing] safety standards"). And it is true that Swizz Style's foreign corporate status weighs against New York's interest in this matter. *Id.* at 114, 107 S.Ct. 1026. But the real question is whether New York is concerned with or interested in providing a pathway to full recovery for the damages caused by the allegedly defectively designed product.

The two phases of the action cannot be artificially broken apart. A citizen of New York was allegedly harmed by tortious conduct. For his insurer to recoup the costs of the damages, a solvent liable party must be held accountable. If the distributor was held liable without efficient recourse against the manufacturer of the item, then in many scenarios the distributer would become effectively judgment proof—particularly in costly products liability litigation. New York would surely not welcome such a result. And the same reasoning demonstrates Swizz Style's interest in having Stadler Form in the litigation.

As to the interstate judicial systems' interest in efficiency or the shared interest between New York and Switzerland in furthering particular policies, neither party has addressed the issues in depth with regard to any conflicts between New York and Switzerland.[8] The Court disagrees that New York's general interest in protecting its citizens is outweighed by Stadler

---

**8.** Stadler Form and Swizz Style disagree as to the import of one provision contained in one of the agreements between the parties, though Stadler Form largely concedes it is inapplicable to the instant dispute, with which the Court agrees. (*See* Stadler Mot. at 17.) The

agreement cited by Stadler Form restructured the corporate relationship between it and Swizz Style, and acknowledged that Swizz Style would continue to be the exclusive distributor of Stadler Form products in the Unit-

**894**

Form's conflicting assertion that it did not target this forum. Swizz Style has alleged monthly meetings updating Stadler Form as to the product's key markets—including New York. Moreover, the Court finds that the underlying product liability determinations will be far more efficient, and that consumers in New York that may be at risk from potentially faulty products will be more protected, by keeping Stadler Form in the case.

As Stadler Form has failed to make a compelling demonstration to the contrary, the reasonableness factors weigh in favor of exercising jurisdiction over Stadler Form in this action.

### CONCLUSION

For the foregoing reasons, Third–Party Defendant's motion to dismiss for lack of personal jurisdiction is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 42. Third–Party Defendant shall file any answer to the Third–Party Complaint on or before April 14, 2017. The parties are directed to inform Judge Davison of this Court's ruling and to revise their case management plan accordingly.

SO ORDERED.

ed States. (*See* Decl. Thomas Pender in Supp. of Mot., Ex. 1, ECF No. 39.) The specific provision at issue states: "All disputes in connection with this agreement will be negotiated without recourse of the Legal System and decided by a judge. Every legal recourse is excluded." (*Id.* at ¶ 16.)

Undoubtedly, whether due to translation or drafting errors, the provisions are unclear and internally inconsistent. The provision indicates that all "legal recourse is excluded." In accordance with that exclusion, "[a]ll disputes *in connection with* th[e] agreement" were required to be "negotiated without recourse [to] the Legal System[.]" Yet disputes

were also to be "decided by a judge." The inconsistencies cannot be reconciled.

In any event, drawing all inferences in favor of Swizz Style, the Court finds that liability for design defects causing damage to a consumer's property is unrelated to the scope of this particular agreement and construes the provision narrowly as relating only to disputes relating to the restructuring of the companies, or to the ongoing validity of the exclusive distribution agreement between Swizz Style and Stadler Form, but not to secondary matters such as indemnification under circumstances like those alleged in this case.