**12-4280-cv(L)**
*Sonera Holding B.V. v. Cukurova Holdings A.S.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2013

(Argued: August 22, 2013     Decided: April 25, 2014)

Docket Nos. 12-4280-cv(L), 13-73-cv(CON), 13-1880-cv(CON)

————————

SONERA HOLDING B.V.,

*Petitioner-Appellee*,

−v.−

ÇUKUROVA HOLDING A.Ş.,

*Respondent-Appellant.*[*]

————————

Before:

WINTER, WESLEY, and CARNEY, *Circuit Judges*.

————————

Appeal from orders of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*) dated September 21, 2012; December 21, 2012; April 18, 2013; and May 10, 2013. The district court held that it had personal jurisdiction over Çukurova based primarily on the New York contacts

---

[*] The Clerk of the Court is directed to amend the official caption as noted above.

of several companies with which Çukurova is affiliated. The Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it "at home" in that state. For the reasons stated below, even assuming the activities of Çukurova's affiliates can be ascribed to it for the purposes of a general jurisdictional analysis, Çukurova lacks sufficient contacts with New York to render it "at home" there. We therefore REVERSE the district court's judgment denying Çukurova's motion to dismiss for lack of personal jurisdiction, VACATE the subsequent judgments of the district court, REMAND the case to the district court, and direct the court to DISMISS the action for lack of personal jurisdiction.

RICHARD J. HOLWELL (Michael Shuster, Dorit Ungar Black, Karen Andrea Grus, *on the brief*), Holwell Shuster & Goldberg LLP, New York, NY, *for Respondent-Appellant*.

PIETER VAN TOL (Andrew M. Behrman, Erin Marie Meyer, *on the brief*), Hogan Lovells US LLP, New York, NY, *for Petitioner-Appellee*.

———————————

PER CURIAM:

Appeal from orders of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*) dated September 21, 2012; December 21, 2012; April 18, 2013; and May 10, 2013. The district court held that it had personal jurisdiction over Çukurova based primarily on the New York contacts of several companies with which Çukurova is affiliated. The Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), reaffirms that general

2

jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it "at home" in that state. For the reasons stated below, even assuming the activities of Çukurova's affiliates can be ascribed to it for the purposes of a general jurisdictional analysis, Çukurova lacks sufficient contacts with New York to render it "at home" there. We therefore REVERSE the district court's judgment denying Çukurova's motion to dismiss for lack of personal jurisdiction, VACATE the subsequent judgments of the district court, REMAND the case to the district court, and direct the court to DISMISS the action for lack of personal jurisdiction.

## BACKGROUND

Sonera Holding B.V. ("Sonera"), a Dutch holding corporation, brought suit in the United States District Court for the Southern District of New York to enforce a final arbitration award against Çukurova Holding A.Ş. ("Çukurova"), the parent company of a large Turkish conglomerate. The parties' underlying dispute arose out of negotiations for Çukurova's sale to Sonera of shares in Turkcell Holding A.Ş. ("Turkcell Holding"), a Turkish joint stock company that owns a controlling stake in Turkey's largest mobile phone operator. Following

3

failed negotiations and a protracted proceeding before an arbitral tribunal in Geneva, Switzerland, the tribunal found that the parties concluded a share purchase agreement and ordered Çukurova to pay Sonera $932 million in damages for its failure to deliver the shares.

Sonera filed applications for enforcement in jurisdictions across the world, including the British Virgin Islands, Switzerland, the Netherlands, and, as relevant here, the Southern District of New York.

Rejecting Çukurova's contention that New York lacked personal jurisdiction over it, the district court issued four orders, from which Çukurova now appeals, confirming the arbitration award in favor of Sonera; denying a motion to reconsider; issuing a preliminary injunction preventing Çukurova from engaging in transactions to shield its assets; and denying dissolution of the preliminary injunction.[1]

Çukurova is a Turkish holding company with its registered office in Istanbul, Turkey. It holds investments in other companies and has no operations and owns no property in New York or any of the United States. Sonera asserts

---

[1] *Sonera Holding B.V. v. Çukurova Holding A.Ş*, 895 F. Supp. 2d 513 (S.D.N.Y. 2012); No. 11 Civ. 8909(DLC), 2012 WL 6644636 (S.D.N.Y. Dec. 21, 2012); No. 11–CV–08909(DLC)(FM), 2013 WL 4405382 (S.D.N.Y. Apr. 18, 2013); No. 11 Civ. 8909(DLC), 2013 WL 1935325 (S.D.N.Y. May 10, 2013).

4

that Çukurova is nonetheless subject to general jurisdiction in New York based on Çukurova's own actions and the actions of Çukurova's affiliates, which, according to Sonera, should be imputed to Çukurova.

The actions on which Sonera predicates its assertion of general jurisdiction include (1) negotiations by Çukurova or one of its affiliates (which occurred outside the United States and were ultimately unsuccessful) to sell an interest in Show TV, a Turkish television broadcaster, to two New York–based private equity funds; (2) Çukurova's sale of American Depository Shares ("ADS") in Turkcell to an underwriter in London, which subsequently offered the ADS for sale on the New York Stock Exchange; (3) the agreement of Digiturk, a Turkish Çukurova affiliate, to provide digital television content to a U.S.-based company; (4) use of a New York office used by Baytur Insaat Taahhüt A.Ş. ("Baytur") and Equipment and Parts Export, Inc. ("EPE"), two Turkish companies affiliated with Çukurova; and (5) statements on EPE's website describing itself as having been "[f]ounded in New York City in 1979" and as Çukurova's "gateway to the Americas."

On appeal, Çukurova (1) challenges the district court's denial of its motions to dismiss for lack of personal jurisdiction and for forum non

5

conveniens; (2) seeks reversal of the district court's decision deferring to the jurisdictional determinations of the arbitral tribunal; and (3) challenges the district court's refusal, on Çukurova's motion to vacate, to reconsider its finding of personal jurisdiction. Because we find Çukurova's contacts with New York insufficient to subject it to general jurisdiction and accordingly reverse the district court's judgment denying Çukurova's motion to dismiss for lack of personal jurisdiction, there is no need to reach Çukurova's remaining arguments.

## DISCUSSION

### A. Personal Jurisdiction

Personal jurisdiction over a foreign defendant in a federal-question case requires a two-step inquiry. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). First, we determine whether the defendant is subject to jurisdiction under the law of the forum state—here, New York. Second, we consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *Id.*

Sonera asserts that Çukurova is subject to general jurisdiction in New York pursuant to N.Y. C.P.L.R. 301, which confers jurisdiction where a company "has engaged in such a continuous and systematic course of 'doing business' [in New

6

York] that a finding of its 'presence' [in New York] is warranted." *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33 (1990) (citations omitted). In *Wiwa v. Royal Dutch Petroleum Co.*, we reasoned that the continuous course of "doing business" in New York "do[es] not necessarily need to be conducted by the foreign corporation itself." 226 F.3d 88, 95 (2d. Cir. 2000). Rather, we interpreted New York law to include an agency theory of jurisdiction that subjects a corporation to general jurisdiction when it relies on a New York representative entity to render services on its behalf "that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." *Id.*

According to Sonera, even if Çukurova's own contacts with New York are insufficient for general jurisdiction, the contacts of Digiturk, Baytur, and EPE should be imputed to Çukurova, and these combined contacts with New York render Çukurova subject to the general jurisdiction of New York. Çukurova contends that New York law does not permit personal jurisdiction on these facts and that even if it did, the agency theory of personal jurisdiction is incompatible with due process.

*B. Due Process*

In light of the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), we need not determine whether the district court correctly found Çukurova subject to its general jurisdiction under New York law.[2] Whatever the purported scope of N.Y. C.P.L.R. 301 and the agency-based theory of jurisdiction articulated in *Wiwa*, *Daimler* confirmed that subjecting Çukurova to general jurisdiction in New York would be incompatible with due process.

In the area of personal jurisdiction, "[t]he canonical opinion . . . remains *International Shoe*, in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct.

---

[2] There is no need to address the scope of general jurisdiction under New York law because the exercise of general jurisdiction over Çukurova is clearly inconsistent with *Daimler*. However, we note some tension between *Daimler*'s "at home" requirement and New York's "doing business" test for corporate "presence," which subjects a corporation to general jurisdiction if it does business there "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917) (Cardozo, J.) (codified along with other "doing business" case law by N.Y. C.P.L.R. 301). Not every company that regularly "does business" in New York is "at home" there. *Daimler*'s gloss on due process may lead New York courts to revisit Judge Cardozo's well-known and oft-repeated jurisdictional incantation.

8

2846, 2853 (2011) (second alteration in original) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: specific and general. Specific or conduct-linked jurisdiction, which Sonera does not assert, "depends on an affiliation[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Id.* at 2851 (alteration in original) (internal quotation marks omitted). By contrast, general jurisdiction exists only when a corporation's contacts with a state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation—even those entirely unrelated to the defendant's contacts with the state.

The natural result of general jurisdiction's "at home" requirement is that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. The paradigm forum for general jurisdiction over an individual is the

9

individual's domicile, his home. For a corporation, it is an equivalent place, with the place of incorporation and the principal place of business being the paradigm bases. "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 760.

## C. Çukurova's Contacts with New York

*Daimler* expressed doubts as to the usefulness of an agency analysis, like that espoused in *Wiwa*, that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego. "[T]he inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: Anything a corporation does through [its affiliate] is presumably something that the corporation would do 'by other means' if the [affiliate] did not exist." *Id.* at 759. (internal quotation marks omitted).

For our purposes, we need not consider whether the agency principles announced in *Wiwa* survive in light of *Daimler*. Even assuming that all of Digiturk's, Baytur's, and EPE's contacts should be imputed to Çukurova, the company's contacts with New York do not come close to making it "at home" there.

10

As noted above, Sonera would predicate general jurisdiction on (1) Çukurova's unsuccessful negotiations to sell a portion of Show TV to two New York–based private equity funds; (2) Çukurova's sale of ADS in Turkcell to an underwriter in London, which subsequently offered the ADS for sale on the New York Stock Exchange; (3) Digiturk's agreement with a U.S.-based company to provide digital television content; (4) a New York office location used by Baytur and EPE; and (5) statements on EPE's website promoting it as Çukurova's connection to the United States.

Çukurova is organized under the laws of the Republic of Turkey, with operations, properties, and assets predominantly located in Turkey. New York is neither Çukurova's place of incorporation nor its primary place of business. Even assuming Digiturk's, Baytur's, and EPE's New York contacts should be imputed to Çukurova, they do not shift the company's primary place of business (or place of incorporation) away from Turkey. And although *Daimler* and *Goodyear* "d[o] not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business,"*Daimler*, 134 S. Ct. at 760, those cases make clear that even a company's "engage[ment] in a substantial, continuous, and systematic course of business" is alone insufficient

11

to render it at home in a forum, *id.* at 761. Çukurova's contacts fall short of those required to render it at home in New York. To subject it to all-purpose general jurisdiction in that state would deny it due process.

### D. Contractual Consent to Personal Jurisdiction

Lastly, Sonera argues that even if Çukurova's contacts with New York are insufficient to support personal jurisdiction, we should still affirm the District Court's decision because Çukurova expressly consented to the forum's jurisdiction.

In March 2005, Sonera and Çukurova entered into an agreement (the "Letter Agreement") that required the parties to make good faith efforts to execute a final share purchase agreement allowing Sonera to purchase Çukurova's interests in Turkcell Holding. The Letter Agreement specifies that any disputes arising out of it are to be settled by arbitration under the rules of the International Chamber of Commerce in Geneva, Switzerland, and that any award of the tribunal shall be final and binding on the parties. As relevant here, Article 5.4(e) of the Letter Agreement further provides as follows:

> Any award of the arbitral tribunal may be enforced by judgment or otherwise in any court having jurisdiction over the award or over the person or the assets of the owing Party or Parties. Applications

> may be made to such court for judicial recognition of the award and/or an order for enforcement, as the case may be.

Sonera reads this provision as an implicit agreement to waive any defense based on lack of personal jurisdiction and to consent to the jurisdiction of any court in any country in the world with subject matter jurisdiction over enforcement actions brought pursuant to the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards—including, under 9 U.S.C. § 203, the United States District Court for the Southern District of New York.

We do not read the provision so broadly. Article 5.4(e) appears to be a standard entry-of-judgment clause designed to clarify that, following any arbitration award, a court of the arbitral venue or in any jurisdiction in which the parties' persons or assets are located would have jurisdiction to enter judgment on that award.[3] Article 5.4(e) does not speak to personal jurisdiction, and we

---

[3] Although a jurisdictional stipulation to entry of judgment in international arbitration contracts is technically unnecessary given 9 U.S.C. § 203's conferral on U.S. district courts of original subject matter jurisdiction over Convention awards, consent to entry of judgment is required, under 9 U.S.C. § 9, for enforcement of domestic arbitration awards, and authorities on international arbitration recommend such clauses be included even in international agreements out of an abundance of caution. *See, e.g.*, R. Doak Bishop, *Drafting the ICC Arbitral Clause*, *in* Transnational Litigation § 41:8 (J. Fellas ed., Westlaw 2014).

decline to interpret the provision as Çukurova's consent to personal jurisdiction in New York.

## CONCLUSION

We have considered all of Sonera's arguments in support of jurisdiction and find them to be without merit. We therefore REVERSE the district court's judgment denying Çukurova's motion to dismiss for lack of personal jurisdiction, VACATE the subsequent judgments of the district court, REMAND the case to the district court, and direct the court to DISMISS the action for lack of personal jurisdiction.