ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Plaintiff Lauren E. Haidon ("Plaintiff"), proceeding pro se , commenced this action on April 21, 2017, against Defendants Budlong & Budlong, LLC (the "Budlong firm"), Culver Michael Budlong ("Budlong"), Laura E. D'Addabbo ("D'Addabbo"), Daryl S. Haberern ("Haberern"), and Lindy S. Nolan ("Nolan") (collectively, "Defendants"), seeking compensatory and punitive damages for various state and federal claims arising from Defendants' legal representation of Plaintiff in both a marriage dissolution and child custody matter and a personal injury action against her now-former husband in Connecticut state court. (Dkt. 1). Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and pursuant to *572 Rules 12(b)(4) and 12(b)(5) for insufficient process and service of process. (Dkt. 4). Defendants also move, in the alternative, to transfer venue to the District of Connecticut pursuant to 28 U.S.C. § 1404. (Id. ). For the following reasons, Defendants' motion to dismiss is granted, and Plaintiff's complaint is dismissed without prejudice.
BACKGROUND
I. Factual Background
The following facts are drawn from Plaintiff's complaint and its exhibits unless otherwise noted. The Budlong firm is a Connecticut-based law firm that is registered with the Connecticut Secretary of State and maintains its primary place of business in Hartford, Connecticut. (Dkt. 1 at ¶ 2). Plaintiff further asserts that Budlong, D'Addabbo, Haberern, and Nolan are all residents of the State of Connecticut. (Id. at 1-2). According to an affidavit submitted by Budlong,[1] he is the founding member of the Budlong firm, which is a Connecticut Limited Liability Company. (Dkt. 4-4 at ¶¶ 1-2). Nolan is a receptionist for the firm, while D'Addabbo is an attorney formerly employed with the firm and Haberern is a paralegal also formerly employed with the firm. (Id. at ¶ 2).
On February 26, 2015, Plaintiff retained Defendants to represent her in a pending marriage dissolution and child custody matter against her now-former husband in Connecticut Superior Court. (Dkt. 1 at 6). Initially, Defendants directed Plaintiff to sign a retainer contract reflecting a $10,000 fee in contemplation of resolving the matter by agreement. (Id. at ¶ 24). However, after contacting opposing counsel, Defendants directed Plaintiff to sign an amended retainer contract reflecting a $25,000 fee to conduct a two-day trial to resolve the matter. (Id. ). The trial was scheduled to commence on April 23, 2015. (Id. at ¶ 25).
After retaining Defendants for the pending marriage dissolution and child custody proceedings, Plaintiff initiated a separate personal injury action against her now-former husband in Connecticut Superior Court on March 18, 2015, in which she was again represented by Defendants. (Id. at 7). Despite billing Plaintiff for significant time allegedly spent on consultation, research, and preparation, Defendants took no action to pursue the personal injury matter on Plaintiff's behalf. (Id. at ¶ 31).
On April 14, 2015, Budlong attended a pre-trial hearing regarding the marriage dissolution and child custody matter with opposing counsel. (Id. at ¶ 34). Plaintiff alleges that Defendant instructed her not to attend the pre-trial hearing and that the trial would begin as previously scheduled. (Id. ).
On April 22, 2015, Plaintiff paid to fly a witness from California to Defendants' office for a full day of trial preparation. (Id. at ¶ 32). Defendants subsequently billed Plaintiff for their time and efforts in preparing the witness for trial. (Id. ). Defendants also billed Plaintiff for documents created in preparation of the trial; however, no trial documents were filed by Defendants with the Connecticut Superior Court. (See id. at ¶¶ 32, 57).
On April 23, 2015, the trial commenced as scheduled. (See id. at ¶ 37). Less than an hour into the trial testimony, and while Plaintiff was testifying, opposing counsel claimed that she needed to take an emergency personal phone call. (Id. ). Budlong asked the state court judge if the parties *573 could take their morning recess, and Budlong's request was granted. (Id. at 32 (trial transcript) ).[2] Plaintiff alleges that after a one-hour recess, Budlong returned to the courthouse to intimidate, threaten, and coerce her into signing a separation agreement, which was apparently drafted by Defendants and opposing counsel during the morning recess. (Id. at ¶ 39).
Plaintiff alleges that she repeatedly stated-in front of multiple witnesses-that she did not want to sign the agreement. (Id. at ¶ 40). Plaintiff further alleges that Budlong berated her after her father contacted her on her cell phone to advise her not to sign the agreement, and that Budlong made racially insensitive comments about Plaintiff's three-year-old daughter. (Id. at ¶¶ 41-43). Budlong also allegedly threatened to withdraw as Plaintiff's counsel if she did not sign the separation agreement. (Id. at ¶ 46). Additionally, Budlong allegedly instructed Plaintiff to tell the state court judge that she fully understood what she had signed and was not coerced in any way. (Id. at ¶ 45).
Plaintiff eventually signed the separation agreement "under extreme duress from her own counsel." (Id. at ¶ 44). After the court proceedings resumed, Budlong informed the state court judge that a "Ms. Richter," who was present in the courtroom, had interfered with a conversation he was having with Plaintiff during the recess, and that this individual had claimed that Budlong was coercing Plaintiff. (Id. at 39). Shortly thereafter, the state court judge ordered that all witnesses be sequestered from the courtroom. (Id. at 41). While Ms. Richter was not a witness, she was also escorted out of the courtroom after repeatedly ignoring the state court judge's requests for her to take a seat. (Id. at 42-43).
Plaintiff subsequently testified that she had not been coerced into signing the separation agreement. (Id. at 49-50, 55). Plaintiff alleges that the first time she became aware that Defendants had previously discussed the separation agreement with the state court judge was during the judge's colloquy with Plaintiff's now-former husband. (Id. at ¶¶ 35-36; see id. at 63). The state court judge accepted the separation agreement and entered it as a court order. (Id. at ¶ 38).
Plaintiff alleges that the separation agreement was not prepared with either her or her minor child's best interests in mind. (Id. at ¶ 12). Among other things, Plaintiff complains that the separation agreement contained no language to differentiate between the "physical custody" and the "legal custody" of her child, contained conflicting and vague language regarding the primary residence of Plaintiff's child, failed to secure any financial support for Plaintiff and her child, and forced Plaintiff to withdraw her personal injury lawsuit against her now-former husband and prevented her from filing a similar action in the future. (Id. at 12-14).
Plaintiff contacted Budlong on several occasions after April 23, 2015, to express her concerns with the separation agreement. (Id. at ¶ 63). Budlong allegedly continued to verbally abuse Plaintiff and instructed her not to call him again. (Id. ). Nolan later informed Plaintiff that Budlong would no longer take her calls. (Id. at ¶ 64). Subsequently, Plaintiff received a bill from Defendants of over $50,000 for costs accrued during their legal representation. (Id. at ¶ 65).
*574 According to Budlong's affidavit, Defendants terminated their representation of Plaintiff in May of 2015, after the marriage dissolution and child custody matter had been resolved. (Dkt. 4-4 at ¶ 7). Throughout the pendency of that matter-and at all times relevant to Plaintiff's claims of wrongful conduct in this action-Plaintiff and her now-former husband resided in Connecticut. (See id. at ¶ 6). Plaintiff has since relocated to New York, but she did not leave the State of Connecticut until after her family law matter was resolved. (See id. ). Defendants provided no legal services to Plaintiff since she began residing in New York State. (Id. at ¶ 7).
Budlong also maintains that the Budlong firm transacts all of its business from a single office located in Hartford, Connecticut, and that the firm neither has a physical office or mailing address in New York, nor does it utilize a New York telephone number or fax number. (Id. at ¶¶ 8-9). Additionally, Budlong maintains that the Budlong firm's website does not affirmatively advertise legal services to or solicit business from New York State citizens, and that the firm has no legal matters pending in New York courts. (Id. at ¶¶ 10-11). Budlong has never been licensed to practice law in New York, and neither was D'Addabbo during her employment at the Budlong firm. (Id. at ¶¶ 13-14). Only one attorney at the firm, who is not named in this lawsuit, is licensed to practice law in New York State, but has, in fact, never done so since joining the Budlong firm. (Id. at ¶ 12). Finally, Budlong asserts that all of the Budlong firm's attorneys and employees reside in Connecticut. (Id. at ¶ 15).
PROCEDURAL HISTORY
Plaintiff commenced this action on April 21, 2017. (Dkt. 1). By Order, dated May 24, 2017, the Court granted Plaintiff leave to proceed in forma pauperis and screened Plaintiffs complaint pursuant to 28 U.S.C. § 1915(e)(2). (Dkt. 3). Additionally, the Court ordered the Clerk of Court to cause the United States Marshals Service to serve Plaintiff's summons and complaint upon Defendants. (Id. ).
On August 30, 2017, service of the summons and complaint was executed upon Rebecca Peters ("Peters")-the Budlong firm's administrative assistant (Dkt. 4-5)-on behalf of the Budlong firm, Budlong, and Nolan (Dkt. 8). Accordingly, service was made upon those defendants 131 days after the filing of Plaintiff's complaint. There is no indication in the record that service of the summons and complaint was ever successfully executed upon the firm's former employees-D'Addabbo or Haberern. (Id. at 3-4). According to Budlong's and Peters's affidavits, Peters was not authorized to accept service on behalf of the Budlong firm, Budlong, or Nolan. (Dkt. 4-4 at ¶ 21; Dkt. 4-5 at ¶¶ 8-10).
On September 19, 2017, Defendants filed the instant motion to dismiss. (Dkt. 4). On September 20, 2017, the Court issued a motion scheduling order directing Plaintiff to submit a response to Defendants' motion by October 17, 2017, and informing Plaintiff that her claims may be dismissed without a trial if she did not respond to the motion. (Dkt. 6). Plaintiff has failed to file a response to Defendants' motion, and she has since taken no further action in this case. The Court now turns to address Defendants' unopposed motion to dismiss.
DISCUSSION
I. Standard for an Unopposed Motion to Dismiss
"When, as here, the Court is presented with an unopposed motion, it may not find for the moving party without reviewing the record and determining whether there is sufficient basis for granting the motion."
*575 Emerson v. Comm'r of Soc. Sec. , No. 12 Civ. 6451 (PAC) (SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) ; see also Anderson v. Pedalty , No. 14-CV-00192, 2015 WL 1735192, at *1 (W.D.N.Y. Apr. 16, 2015) ("[W]here a Rule 12(b) motion has not been opposed, [the] Court must review the merits of the motion and determine whether the movant has carried its burden."). In doing so, "[i]t is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.' " Green v. United States , 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted).
II. Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) -Insufficient Process and Insufficient Service of Process
A. Legal Standard
"Objections to sufficiency of process under Fed. R. Civ. P. 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation." DiFillippo v. Special Metals Corp. , 299 F.R.D. 348, 352-53 (N.D.N.Y. 2014) (citation omitted). "[A] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b)[3] or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." Jackson v. City of N.Y. , No. 14-CV-5755 (GBD)(KNF). 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1353 (3d ed. 2004) ). By contrast, "[a] Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." Id. (quoting Wright & Miller, supra , § 1353 ). Thus, where "movants do not assert noncompliance with Rule 4(b), dealing with the content of the summons, or otherwise challenge the form of the process[,] ... their motion is not governed by Rule 12(b)(4)." Id. ; see also Wright & Miller, supra , § 1353 ("Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare."). Although Defendants have styled their motion to dismiss for "insufficient process" under both Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure, Defendants' argument that Plaintiff did not timely or properly effect service of process does not "identify substantive deficiencies in the summons, complaint or accompanying documentation," see DiFillippo , 299 F.R.D. at 352-53 ; thus, their motion is governed by Rule 12(b)(5).
"[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of [service of] process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." Koulkina v. City of N.Y. , 559 F.Supp.2d 300, 311 (S.D.N.Y. 2008). The burden is on the plaintiff to establish that service was sufficient. Khan v. Khan . 360 F. App'x 202, 203 (2d Cir. 2010) (citing Burda Media, Inc. v. Viertel , 417 F.3d 292, 298 (2d Cir. 2005) ).
III. Defendants' Rule 12(b)(5) Arguments Are Unpersuasive
Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time."
*576 Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. "Good cause ... is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond the plaintiff's control." Feingold v. Hankin , 269 F.Supp.2d 268, 276 (S.D.N.Y. 2003). "Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay." AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P. , 197 F.R.D. 104, 108 (S.D.N.Y. 2000).
"[T]he Second Circuit has noted that a plaintiff's in forma pauperis status 'shift[s] responsibility for serving the complaint from [the plaintiff] to the Court.' " Jaiyeola v. Carrier Corp. , 242 F.R.D. 190, 192 (N.D.N.Y. 2007) (quoting Wright v. Lewis , 76 F.3d 57, 59 (2d Cir. 1996) ); see also Kavazanjian v. Rice , No. 03-CV-1923 (FB)(SMG), 2005 WL 1377946, at *2 (E.D.N.Y. June 6, 2005) ("For plaintiffs proceeding in forma pauperis , ... the Marshal's Office-not the plaintiff-is primarily responsible for effecting service."). Where an in forma pauperis plaintiff "provides the information necessary to identify the defendant, courts have uniformly held that the [United States] Marshals' failure to effect service automatically constitutes good cause within the meaning of Rule 4(m)."[4] Ruddock v. Reno , 104 F. App'x 204, 206-07 (2d Cir. 2004) (collecting cases). Even if the Marshals fail to find the defendant at the address provided by the plaintiff, courts may still find good cause. See Sidney v. Wilson , 228 F.R.D. 517, 523 (S.D.N.Y. 2005) ("Although the Marshals Service did not succeed in serving Wilson with the Original Complaint, that failure does not bar [the plaintiff] from maintaining the instant action.").
Furthermore, "courts in this Circuit ... have found that '[w]here a party contesting service of process has received actual notice, service requirements ... are construed liberally.' " Anderson v. Lalley , No. 12-CV-6355-FPG, 2015 WL 6686586, at *4 (W.D.N.Y. Oct. 29, 2015) (citation omitted) (rejecting the defendant's 12(b)(5) argument because the defendant had actual notice of the lawsuit brought by a pro se inmate proceeding in forma pauperis who relied upon the United States Marshals to effect service); see also Romandette v. Weetabix Co. , 807 F.2d 309, 311 (2d Cir. 1986) (" Rule 4 of the Federal Rules is to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.' " (quoting Grammenos v. Lemos , 457 F.2d 1067, 1070 (2d Cir. 1972) ) ). "More specifically, deficiencies in service are 'harmless error ... when the party *577 asserting deficient service has actual knowledge of the action and no prejudice results from the deficiency." Anderson , 2015 WL 6686586, at *4 (citation omitted); see also Sidney , 228 F.R.D. at 524 (finding that, on a 12(b)(5) motion to dismiss, the defendant's act of retaining counsel demonstrated actual notice of the lawsuit).
Here, Plaintiff has failed to submit any opposition papers disputing Defendants' argument that they were improperly and untimely served with process. However, Plaintiff was granted in forma pauperis status, and the Court subsequently ordered the United States Marshals Service to effect service on Plaintiff's behalf. (Dkt. 3). As such, the United States Marshals Service was primarily responsible for serving Defendants. See Wright , 76 F.3d at 59 ; Jaiyeola , 242 F.R.D. at 192 ; Kavazanjian , 2005 WL 1377946, at *2. Since Plaintiff provided the necessary information to identify Defendants, Plaintiff has good cause for failing to meet the requirements of Rule 4(m), despite any failure by the United States Marshals Service in effecting proper service on Defendants. See Ruddock , 104 F. App'x at 206-07 ; Sidney , 228 F.R.D. at 523. Additionally, Defendants clearly received actual notice of Plaintiffs lawsuit, as evidenced by the fact that they secured legal counsel to represent them in this matter. See Sidney , 228 F.R.D. at 524. Considered in tandem with Plaintiff's pro se and in forma pauperis statuses, Defendants' actual notice of this lawsuit gives the Court good reason to reject Defendants' Rule 12(b)(5) arguments. Accordingly, to the extent that Defendants contend that Plaintiff's complaint should be dismissed for insufficient service of process, Defendants' motion is denied.
IV. Rule 12(b)(2) -Lack of Personal Jurisdiction
A. Legal Standard
"The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause.... It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee , 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Lit. , 334 F.3d 204, 206 (2d Cir. 2003). "A plaintiff may meet this burden 'by pleading in good faith ... legally sufficient allegations of jurisdiction, i.e. , by making a "prima facie showing" of jurisdiction.' " Gaymar Indus., Inc. v. FirstMerit Bank, N.A. , No. 06-CV-70S, 2007 WL 894217, at *3 (W.D.N.Y. Mar. 21, 2007) (quoting Jazini v. Nissan Motor Co., Ltd. , 148 F.3d 181, 184 (2d Cir. 1998) ). "A plaintiff can make such a prima facie showing through affidavits and supporting material containing sufficient facts which, if credited, would establish personal jurisdiction over the defendant." Id. (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp. , 84 F.3d 560, 567 (2d Cir. 1996) ). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Fin., Inc. v. Petra Bank , 989 F.2d 76, 79-80 (2d Cir. 1993).
"In general, a 'district court's personal jurisdiction is determined by the law of the state in which the court is located.' "
*578 Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC , 875 F.Supp.2d 211, 219 (W.D.N.Y. 2012) (quoting Spiegel v. Schulmann , 604 F.3d 72, 76 (2d Cir. 2010) ). "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to [ CPLR 301 ] ... or specific jurisdiction pursuant to [ CPLR 302 ]." Thackurdeen v. Duke Univ. , 130 F.Supp.3d 792, 798 (S.D.N.Y. 2015) (quotation marks and citation omitted), aff'd , 660 F. App'x 43 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the ... defendant, wherever arising, and whoever the plaintiff." Brown v. Lockheed Martin Corp. , 814 F.3d 619, 624 (2d Cir. 2016). "If personal jurisdiction exists under the forum state's laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements." Gaymar Indus. , 2007 WL 894217, at *3 (citing Metro Life Ins. , 84 F.3d at 567 ).
B. General Jurisdiction
"New York's general jurisdiction statute allows a court to 'exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.' " Polaz v. Bowers Trucking, LLC , No. 18-CV-527 (ARR) (SJB), 2018 WL 1413454, at *3 (E.D.N.Y. Mar. 20, 2018) (quoting CPLR 301 ). The Supreme Court has held that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown , 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citing Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement , 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] ... bases for general jurisdiction." Daimler AG v. Bauman , 571 U.S. 117, 137, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (quotation omitted); see Brown , 814 F.3d at 627 (" Daimler established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business-the 'paradigm' cases.").
"Similarly, as it relates to individuals, the new inquiry focuses on whether the defendant may fairly be regarded as 'at home' in the forum state-a location which, according to the Second Circuit, is generally limited to that individual's domicile." Lebron v. Encarnacion , 253 F.Supp.3d 513, 519 (E.D.N.Y. 2017) (citing Sonera Holding B.V. v. Cukurova Holding A.S. , 750 F.3d 221, 225 (2d Cir. 2014) ). "In fact, an individual's domicile in New York has become something of a sine qua non for exercising all-purpose jurisdiction here." Id. (collecting cases).
Before the Supreme Court's decisions in Goodyear and Daimler , it was well established that, under CPLR 301, "a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." Wiwa v. Royal Dutch Petroleum Co. , 226 F.3d 88, 95 (2d Cir. 2000). In order for general jurisdiction to apply under this standard, the plaintiff was required to demonstrate that the foreign corporation did "business in New York not occasionally or casually, but with a fair measure of permanence and continuity," such that the defendant "engaged in continuous, permanent, and substantial activity in New York." Id. (quotation marks and citations omitted).
"The Supreme Court's ... decision in Daimler AG v. Bauman has brought uncertainty to [the] application of New *579 York's 'doing business' rule. As a result, it is unclear whether existing New York general jurisdiction jurisprudence remains viable." Reich v. Lopez , 38 F.Supp.3d 436, 454-55 (S.D.N.Y. 2014) (citing Sonera Holding B.V. , 750 F.3d at 225 n.2 ("[W]e note some tension between Daimler's 'at home' requirement and New York's 'doing business' test....") ). aff'd 858 F.3d 55 (2d Cir. 2017). Indeed, there is no denying that Daimler affected a substantial change of law relating to the doctrine of general jurisdiction. See, e.g. , Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C. , No. 16-cv-35, 2016 WL 7174646, at *4 (D. Vt. Dec. 7, 2016) ("The Supreme Court's decision in [ Daimler ] changed the law of general jurisdiction, making it substantially more difficult to establish that type of personal jurisdiction."); Hood v. Ascent Med. Corp. , 13-cv-0628 (RWS) (DF), 2016 WL 1366920, at *8 (S.D.N.Y. Mar. 3, 2016) ("In the recent cases of Daimler and Goodyear , the Supreme Court made clear that the constitutional standard for finding a corporation to be essentially at home in a foreign jurisdiction is a stringent one, and that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." (internal quotations omitted) ), report and recommendation adopted , 13 Civ. 628 (RWS), 2016 WL 3453656 (S.D.N.Y. June 20, 2016). Although " Goodyear seemed to have left open the possibility that contacts of substance, deliberately undertaken and of some duration, could place a corporation 'at home' in many locations[, Daimler ] ... considerably altered the analytic landscape for general jurisdiction and left little room for these arguments." Brown , 814 F.3d at 629.
"Since Daimler , the Second Circuit has avoided reinterpreting CPLR § 301, a state statute." Reich , 38 F.Supp.3d at 455 n.4 (citing cases). Instead, the Second Circuit has made clear that "[t]he paradigm forum for general jurisdiction over an individual is the individual's domicile, his home," and that "[f]or a corporation, it is ... the place of incorporation and the principle place of business...." Sonera Holding B.V. , 750 F.3d at 225.
Here, Plaintiff has neither asserted nor established in her complaint that Defendants are subject to general jurisdiction in New York. In fact, Plaintiff asserts that Budlong, D'Addabbo, Haberern, and Nolan are residents of Connecticut. (Dkt. 1 at ¶¶ 3-6). As such, these individual defendants are domiciled in Connecticut. Additionally, the parties agree that the Budlong firm is registered as a Connecticut Limited Liability Company with its primary place of business in Hartford, Connecticut. (Id. at ¶ 2; Dkt. 4-4 at ¶ 8). Accordingly, Defendants are not subject to general jurisdiction in New York under the general principles outlined in Daimler and recent Second Circuit precedent. See, e.g. , Daimler , 571 U.S. at 137, 134 S.Ct. 746 ; Sonera Holding B.V. , 750 F.3d at 225 ; Lebron , 253 F.Supp.3d at 519.
As such, in order for Defendants to be found "essentially at home" in New York, this matter must represent an "exceptional case." See Daimler , 571 U.S. at 139 n.19, 134 S.Ct. 746. Daimler cited only to Perkins v. Benguet Consol. Mining Co. , 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) as an example of the kind of "exceptional case" that fell outside the recognized "paradigm cases." See Daimler , 571 U.S. at 139 n.19, 134 S.Ct. 746 ; see also Brown , 814 F.3d at 628 n.8. However, in Perkins , the defendant's principal place of business had temporarily shifted to Ohio-where the defendant's president maintained his home-to permit the corporation to carry on its "wartime activities." 342 U.S. at 447-48, 72 S.Ct. 413. The defendant's president directed many of these wartime activities from Ohio, where he set up an office and conducted business on behalf of the defendant *580 and maintained the defendant's office files. Id. at 447-48, 72 S.Ct. 413. The president also "used and maintained ... two active bank accounts carrying substantial balances of company funds," and drew upon corporate funds to pay salaries as well as to rehabilitate the defendant's properties in the Philippines. Id. at 448, 72 S.Ct. 413. It was due to this unusual factual scenario that the Court found that the assertion of general jurisdiction by the Ohio courts would be permissible.
By contrast, the instant matter is not even slightly comparable to the exceptional circumstances presented in Perkins , especially where Plaintiff's own allegations reveal-and Budlong's affidavit confirms-that Defendants maintain no presence in New York so as to render them "essentially at home" in this State. Therefore, Plaintiff has not established that this is an "exceptional case" in which personal jurisdiction may be asserted over Defendants in a manner akin to Perkins , and thus, Plaintiff has failed to carry her burden of demonstrating that Defendants are subject to general jurisdiction in New York.
C. Specific Jurisdiction
CPLR 302(a), "New York's long-arm statute, confers 'specific jurisdiction over a non-domiciliary defendant arising out of particular acts.' " Reich , 38 F.Supp.3d at 457 (citation omitted). Under the factual circumstances alleged in the instant matter, Plaintiff may only seek to invoke the provisions of CPLR 302(a)(3),[5] which provides that a court may exercise personal jurisdiction over a non-domiciliary that
commits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenues from interstate or international commerce.
Id.
"Courts determining whether there is an injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a 'situs-of-injury test, which asks them to locate the "original event which caused the injury.' " " DiStefano v. Carozzi N. Am., Inc. , 286 F.3d 81, 84 (2d Cir. 2001) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez , 171 F.3d 779, 791 (2d Cir. 1999) ); see Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co. , 586 F. App'x 768, 772 (2d Cir. 2014) (applying the situs-of-the-injury test). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." Mareno v. Rowe , 910 F.2d 1043, 1046 (2d Cir. 1990) (quotation marks and citations omitted); see *581 Weaver v. Derichebourg ICS Multiservices , No. 09 Civ. 1611 (LTS) (DF), 2010 WL 517595, at *2 (S.D.N.Y. Feb. 3, 2010) ("The 'original event' occurs 'where the first effect of the tort ... that ultimately produced the final economic injury' is located." (quoting DiStefano , 286 F.3d at 85 ) ); Paterno v. Laser Spine Inst. , 24 N.Y.3d 370, 381, 998 N.Y.S.2d 720, 23 N.E.3d 988 (2014) (stating that the situs of the injury "is the location of the original event which caused the injury, and not where a party experiences the consequences of such injury"). Moreover, "a litigant may not carry an injury home for purposes of section 302(a)(3)." Thackurdeen , 130 F.Supp.3d at 805 (collecting cases).
Here, Plaintiff's claims all arise out of Defendants' legal representation in her Connecticut state court proceedings. In applying the situs-of-the-injury test, it is clear that the original events that Plaintiff alleges caused each of her injuries occurred in Connecticut. It is of no consequence that Plaintiff continues to experience any ramifications of Defendants' alleged misconduct in New York after subsequently moving to this State. See, e.g. , Thackurdeen , 130 F.Supp.3d at 805. Thus, Plaintiff cannot avail herself of the provisions set forth in CPLR 302(a)(3), and, since no other provision of New York's long-arm statute applies to the facts alleged in Plaintiff's complaint, Plaintiff has also failed to establish any basis for the assertion of specific jurisdiction over Defendants.
Therefore, since Plaintiff has failed to establish either general or specific jurisdiction over Defendants under New York law, Defendants' motion to dismiss for lack personal jurisdiction is granted.
V. The Court Declines to Exercise Its Discretion to Transfer Venue
Although the Court grants Defendants' motion to dismiss for lack of personal jurisdiction, "[a] court may transfer an action to another venue even if it lacks personal jurisdiction over the defendants." Gaymar Indus. , 2007 WL 894217 at *6 (citing Goldlawr, Inc. v. Heiman , 369 U.S. 463, 465, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) ); see also SongByrd, Inc. v. Estate of Grossman , 206 F.3d 172, 179 n.9 (2d Cir. 2000) ("[L]ack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either section 1406(a) or section 1404(a)."); Maldonado v. Rogers , 99 F.Supp.2d 235, 240 (N.D.N.Y. 2000) ("A district court has the discretion to transfer a case in the interests of justice where personal jurisdiction is lacking, whether or not venue is proper."). Pursuant to 28 U.S.C. § 1404(a), "[a] civil action may be transferred to any other district where it might have been brought, for the convenience of parties and witnesses, in the interests of justice." Mangia Media Inc. v. Univ. Pipeline, Inc. , 846 F.Supp.2d 319, 324 (E.D.N.Y. 2012). "The decision whether to transfer or dismiss a case pursuant to § 1404(a) or § 1406(a) lies within the sound discretion of the district judge." Gaymar Indus. , 2007 WL 894217 at *6 (citing Van Dusen v. Barrack , 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ).
It is undisputed that all material events to this action took place in Connecticut, Plaintiff was a resident of Connecticut at the time the alleged wrongs occurred, and Defendants all reside in Connecticut. Indeed, it appears that any witnesses or other evidence supportive of the alleged misconduct would likely be located in Connecticut. However, Plaintiff never filed any opposition papers to Defendants' motion, and she has taken no action in this case for nearly nine months. Since Defendants argue for a transfer of venue in the alternative *582 only, and Plaintiff has failed to respond to Defendants' motion in any way, the Court chooses to dismiss the complaint and declines to exercise its discretion to transfer the case to the District of Connecticut.
CONCLUSION
For the foregoing reasons, Defendants' motion to dismiss (Dkt. 4) is granted for lack of personal jurisdiction, and Plaintiff's complaint (Dkt. 1) is dismissed without prejudice.
SO ORDERED.

A court may take into account factual materials outside the pleadings when considering a motion to dismiss based upon an asserted lack of personal jurisdiction or insufficient service of process. Blau v. Allianz Life Ins. Co. of N. Am. , 124 F.Supp.3d 161, 168 n.3 (E.D.N.Y. 2015) (collecting cases).

Plaintiff's complaint includes excerpts of the court transcripts involving the marital dissolution and child custody proceedings. (See Dkt. 1 at 31-68). All citations to these transcripts use the numeration denoted by CM/ECF rather than the pagination of the original transcript.

Federal Rule of Civil Procedure 4(b) states:
Issuance. On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons-or a copy of a summons that is addressed to multiple defendants-must be issued for each defendant to be served.

The Second Circuit has also stated:
If a plaintiff proceeding [in forma pauperis ] chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.
Meilleur v. Strong , 682 F.3d 56, 63 (2d Cir. 2012). However, ultimately the district court has discretion to evaluate whether good cause exists within the meaning of Rule 4(m), and that decision depends upon the facts of the particular case under consideration. See, e.g., Devore v. Neighborhood Hous. Servs. of Jam., Inc. , 15-CV-6218 (PKC), 2017 WL 1034787, at *14 (E.D.N.Y. Mar. 16, 2017) (distinguishing result in Meilleur because the defendant received actual notice and noting that the Meilleur panel indicated it may have exercised its discretion differently than the district court); Tinsley v. Town of Brookhaven Dep't of Pub. Safety , No. 14-CV-7227 (JS)(ARL), 2017 WL 744570, at *4 n.7 (E.D.N.Y. Feb. 24, 2017) (distinguishing Meilleur because the plaintiff did not choose to rely on the Marshals; rather, the court ordered the Marshals to serve the plaintiff's summons and complaint).

Subsections 302(a)(1) and (2) require a defendant to have undertaken certain acts "within the state." See CPLR 302(a)(l)-(2) ; see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC , 450 F.3d 100, 103 (2d Cir. 2006) (stating that in order for personal jurisdiction to be established pursuant to CPLR 302(a)(1), "the defendant must have transacted business within the state," and "the claim asserted must arise from that business activity"); Karoon v. Credit Suisse Grp. AG , No. 15-CV-4643 (JPO), 2016 WL 815278, at *5 (S.D.N.Y. Feb. 29, 2016) ("Under Second Circuit precedent, the exercise of specific jurisdiction under CPLR § 302(a)(2) requires a tortfeasor to be physically present in New York."). Subsection 302(a)(4) requires a defendant to "own[ ], use[ ], or possess[ ] any real property situated within the state." CPLR 302(a)(4). Here, Plaintiff's claims arise from Defendants' alleged conduct occurring in Connecticut, not New York State. As such, subsections 302(a)(1), (2), and (4) are inapplicable.